IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE ) <br> CORPORATION AS RECEIVER ) <br> FOR COLONIAL BANK, a domestic ) <br> banking corporation, ) <br> ) <br>       Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CREDIT SUISSE SECURITIES ) <br> (USA) LLC, a limited liability ) <br> company; MORGAN STANLEY ) <br> & CO. LLC, a limited liability ) <br> company; RBS SECURITIES INC., ) <br> a corporation; and UBS ) <br> SECURITIES LLC, a limited ) <br> liability company, ) <br> ) <br>       Defendants. ) | CASE NO. 2:12-CV-784-WKW |

**MEMORANDUM OPINION AND ORDER**

In an Order entered on November 19, 2015, the court denied Defendants' Motion to Reopen Discovery for the Limited Purpose of Discovering Settlement Information and Motion to Compel Disclosure of Settlement Information. The denial was without prejudice, with leave given for Defendants to re-file should Plaintiff obtain a judgment in its favor. (Doc. # 69.) Defendants now move for reconsideration of that Order. (Docs. # 79, 80.) Defendants contend that the court's ruling was premature and prevented them from filing a reply brief in support of their motion to reopen discovery and motion to compel, that good cause

exists to reopen discovery, and that there are ample grounds to grant the motion to compel disclosure of settlement information. For the reasons that follow, Defendants' motion for reconsideration will be granted, and Defendants' brief filed in conjunction with the motion to reconsider will be treated as a timely reply brief in support of Defendants' motion to reopen discovery and motion to compel. Further, Defendants' motion to reopen discovery and motion to compel disclosure of settlement information are due to be granted to the extent set out herein.

## I.  BACKGROUND

A.   **Generally About this Action**

This lawsuit, brought by the Federal Deposit Insurance Corporation as receiver for the failed Colonial Bank ("FDIC-R"), "is part of the ongoing legal fallout from the Mortgage Backed Securities collapse, a financial calamity that has been described sufficiently in a surfeit of legal opinions, periodicals, government reports, and other sources." (Doc. # 12-393, at 1.)  In the span of two months in 2012, the FDIC-R commenced this lawsuit in the Circuit Court of Montgomery, Alabama; Defendants removed it here; and the suit was transferred to the United States District Court for the Central District of California pursuant to an order of the Judicial Panel on Multidistrict Litigation as part of the Countrywide Multidistrict Litigation ("MDL"). In June 2015, pursuant to 28 U.S.C. § 1407(a), this action was remanded to the undersigned following the completion of MDL proceedings.  (Doc. # 12.)

The MDL court fastidiously presided over discovery and ruled on multiple substantive motions. When this action left this court for MDL proceedings, there were myriad claims and eleven defendants. Upon this lawsuit's return, and volumes later, there are four Defendants remaining—Morgan Stanley & Co., LLC; RBS Securities Inc.; Credit Suisse Securities (USA) LLC; and UBS Securities LLC (collectively, "Defendants")—and a single claim under § 8-6-19(a)(2) of the Alabama Securities Act ("ASA"). The remaining Defendants are the underwriters of residential mortgage-backed securities purchased by Colonial Bank prior to its collapse.

In the parties' words, this is what the case, as it stands now, is about:

> The FDIC alleges that, prior to [Colonial Bank's] failure, Colonial Bank invested in five residential mortgage-backed securities ("RMBS"), known as certificates, each of which was underwritten and sold by one of the Defendants. After Colonial Bank failed, the FDIC was appointed Receiver of Colonial Bank and appears here in that capacity.
>
> RMBS are investments created by a process known as securitization. A large number of mortgage loans are grouped into so-called collateral pools that are sold into a trust. The trust raises the money to buy the loans by issuing certificates that are sold to investors. Each certificate entitles its holder to an agreed portion of the cash flows (*i.e.*, borrower repayments) from the mortgage loans contained in the collateral pool. Typically, the cash flows from the loans in the collateral pools are the sole source of funds to pay the investors that purchase the certificates.
>
> All of the offerings at issue here were sponsored by Countrywide Financial Corp. and its related entities. Each remaining defendant was a securities underwriter of at least one of the certificates that Colonial Bank allegedly purchased.

> The FDIC alleges that the offering materials for each certificate at issue contained materially untrue or misleading statements. Such statements included: 1) materially untrue or misleading statements about the loan-to-value ratios (LTVs) of the mortgage loans in the collateral pools backing the certificates; 2) materially untrue or misleading statements that the appraisals of the homes securing the loans in the collateral pools were performed in accordance with the Uniform Standards of Professional Appraisal Practice ("USPAP"); 3) materially untrue or misleading statements that the loans in the collateral pools were originated in accordance with applicable loan underwriting guidelines; and 4) materially untrue or misleading statements relating to the ratings assigned to the certificates by credit rating agencies.

(Doc. # 38, at 2–4 (Joint Status Report).) Defendants "dispute each of these claims legally and factually" and have pleaded a number of defenses in response to Plaintiff's claims under § 8-6-19(a)(2) of the ASA. (Doc. # 38, at 4–5.)

**B.     Specifically About Defendants' Pending Motions**

For purposes of Defendants' pending motions to reopen discovery and to compel disclosure of settlement information, the following background is pertinent. Fact discovery closed on February 7, 2014, while this action was pending in the MDL court. Six-and-a-half months later, on August 21, 2014, as part of a global settlement of $16.65 billion, the FDIC-R settled twenty lawsuits, fourteen of which involved the FDIC-R's suits against specified Bank of America entities ("BOA Entities") arising from the sale of toxic residential mortgage-backed securities to twenty-six failed banks, including Colonial Bank ("FDIC-R Settlement"). Specifically, the FDIC-R Settlement resolved the FDIC-R's claims

in this lawsuit against Bank of America Corporation and four of its Countrywide subsidiaries[1] ("Bank of America" and "Countrywide Defendants," respectively). Based upon that settlement agreement, the MDL court entered an Order that dismissed with prejudice the FDIC-R's claims against Bank of America and the Countrywide Defendants "[p]ursuant to the parties' December 8, 2014 Stipulation to Dismiss . . . ." (Doc. # 12-382.)

The FDIC-R Settlement provides that the Bank of America Entities' contribution to the $16.65 billion global settlement is $1.031 billion. Although the FDIC-R Settlement documents are available publicly,[2] those documents reveal only a lump sum payment of $1.031 billion and do not specify what portion of the $1.031 billion was allocated to the claims against Bank of America and the Countrywide Defendants in this lawsuit. Defendants seek discovery relating to "how much of that billion-dollar recovery should be allocated to this action . . . , and thus, what satisfaction [the FDIC] has already received for its claims in this case." (Doc. # 55, at 6.) Defendants also want to delve into the methodology underlying the FDIC-R's allocation, but contend that the FDIC-R has refused to disclose this information. Accordingly, Defendants move the court "to compel [the FDIC-R] to provide a description of the settlement allocation and the methodology

---

[1] Those subsidiaries, referred to collectively as "the Countrywide Defendants," are: Countrywide Securities Corporation; CWALT, Inc.; CWMBS, Inc.; and Countrywide Financial Corporation.

[2] The FDIC-R provides an internet link to access the settlement documents. (Doc. # 64, at 3 n.5.)

behind it." (Doc. # 55, at 6.) They request the court to reopen discovery for the purposes of propounding interrogatories and document requests and taking a single deposition as to the amount of the settlement allocated to this action and the methodology underlying that allocation.

In a prior Order, the court denied Defendants' motions to compel and to reopen discovery, but granted Defendants "leave to re-file the motions as they pertain to a damages set-off should Plaintiff obtain a judgment in its favor." (Doc. # 69.) That Order now is under reconsideration on Defendants' urging (Doc. # 79), and the court is treating Defendants' briefing on reconsideration as a timely reply brief in support of their motion to reopen discovery and motion to compel.

## II. DISCUSSION

The discussion proceeds in two parts. Defendants' motion to compel is addressed first and then the motion to reopen discovery.

A. **Defendants' Motion to Compel Disclosure of Settlement Information**

Pursuant to Federal Rule of Civil Procedure 26(b)(1), the court has broad discretion to ensure that the parties "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ."[3] Fed. R. Civ. P. 26(b)(1). "Information within this scope of

---

[3] The amendments to Rule 26(b)(1) became effective on December 1, 2015. Pursuant to statute, the amended Rule 26 governs all civil cases commenced after December 1, 2015, and "insofar as just and practicable, all proceedings then pending." 28 U.S.C. § 2074(a); *see also* Fed. R. Civ. P. 86. Although this action was pending when the amendments to Rule 26(b)(1)

6

discovery need not be admissible in evidence to be discoverable." *Id.* If a party refuses to disclose relevant discovery, Federal Rule of Civil Procedure 37(a) permits the opponent to move for an order requiring disclosure or discovery.

Defendants' motion to compel has two components. First, Defendants move the court to compel the FDIC-R to disclose the portion of the $1.031 billion settlement that the FDIC-R allocated to the claims against Bank of America and the Countrywide Defendants in this action. Second, Defendants seek discovery as to "how and why the FDIC allocated settlement proceeds in this action." (Doc. # 80, at 8.) Defendants contend that the dollar amount *and* methodology of the FDIC-R's allocation are relevant to their defense seeking a damages set-off based upon the FDIC-R Settlement. They argue that this settlement information is discoverable now (and not after the verdict) pursuant to Rule 26(b)(1). The FDIC-R, which leans on the court's prior ruling, contends that discovery pertaining to the settlement allocation does not become relevant "unless and until a jury returns a verdict for the FDIC-R." (Doc. # 64, at 1.) It contends further that "anything beyond" the sheer dollar amount of the allocation is not discoverable. (Doc. # 64, at 1.) Hence, the FDIC-R opposes any discovery into the methodology underlying its allocation of the $1.031 billion settlement to the claims in this case. As the

---

went into effect, the rule will be applied because no party has shown or argued that its application would be unjust and impracticable.

arguments reveal, the parties disagree on the scope and timing of the discoverability of the settlement information that Defendants are seeking.

The issues surrounding the scope of discovery are tethered primarily to the relevance of Defendants' set-off defense. Rule 26(b)(1) permits discovery on matters relevant to a party's defense, and, thus, it is necessary initially to discern the principles of law that govern the set-off defense. The parties' arguments rest on the premise, but without much elaboration, that Alabama law governs the availability of affirmative defenses to the ASA claim. Based upon the Supreme Court's reticence to create federal common law where the FDIC brings claims in its capacity as receiver for a failed federally insured bank, the court proceeds in accordance with the parties' premise. *See generally O'Melveny & Myers v. F.D.I.C.*, 512 U.S. 79, 83 (1994) ("There is no federal general common law, and . . . the remote possibility that corporations may go into federal receivership is no conceivable basis for adopting a special federal common-law rule divesting States of authority over the entire law of imputation." (internal quotation marks and citation omitted); *id.* at 86–87 ("[I]t is hard to avoid the conclusion that [12 U.S.C.] § 1821(d)(2)(A)(i) places the FDIC in the shoes of the insolvent [failed insured depository institution], to work out its claim under state law . . . ."); *see id.* at 90 (Stevens, J., concurring) ("Because state law provides the basis for respondent FDIC's claim, that law also governs both the elements of the cause of action and

its defenses."). While the parties agree that Alabama law governs, they disagree as to what Alabama law requires.

Under Alabama law, a set-off is an affirmative defense. *See Morris v. Laster*, 821 So. 2d 923, 930 (Ala. 2001). It is based upon the pro tanto rule, also referred to as the one-satisfaction rule. "Alabama law has long recognized the principle that a plaintiff injured by joint tortfeasors may accept a partial satisfaction and release from one or more of the tortfeasors and still maintain an action against the remaining tortfeasors." *Id.* Alabama does not permit contribution among joint tortfeasors, *Ex parte Stenum Hosp.*, 81 So. 3d 314, 318 (Ala. 2011), but "[i]n those cases where one tortfeasor settles, [Alabama courts] have allowed the nonsettling tortfeasor to have the jury award reduced by the amount of any pro tanto settlement." *Ex parte Goldsen*, 783 So. 2d 53, 56 (Ala. 2000); *see also Morris*, 821 So. 2d at 930 ("Any amount recovered by the plaintiff in a pro tanto settlement . . . reduces the amount owed by the remaining defendant, because there can be only one satisfaction of a claim."); *Williams v. Colquett*, 133 So. 2d 364, 368 (Ala. 1961) ("It is also settled that while a party is entitled to full compensation for his injuries there can be only one satisfaction therefor."). Under Alabama law, "the injured party [has] the option to settle with one pro tanto and proceed to collection of the full amount recovered against the other . . . , while permitting the defendant proceeded against [to] plead and/or prove [the] amount of

settlement as set off against damages otherwise recoverable."[4]  *Wylam Ice Co. v. King*, 304 So. 2d 1, 3 (Ala. 1974) (internal footnote omitted).  The settling defendant must, in fact, be a joint tortfeasor.  *See Ex parte Martin*, 598 So. 2d 1381, 1385 (Ala. 1992) ("[N]on-joint tort-feasor defendants whose acts do not combine to cause one single injury cannot claim a set-off as a matter of law of any amount received by the plaintiff in settlement with other non-joint tort-feasor defendants based on distinct acts of those defendants.").

At this juncture, the FDIC-R's arguments go so far as to presume that should the FDIC-R prevail in this litigation, Defendants will be entitled to a damages set-off, thus, removing presently any issue as to whether Bank of America, the Countrywide Defendants, and the remaining Defendants are joint tortfeasors.  For purposes of resolving the discovery dispute, the court operates under the same presumption.  To take the analysis one step further, the FDIC-R does not contend that under Alabama law the amount of the FDIC-R Settlement allocated to this action is irrelevant.  That argument would be difficult to make where Defendants

---

[4] Contrary to Alabama, other states apply varying formulas to reduce the verdict by the settling joint tortfeasor's apportioned share of liability, notwithstanding the amount of the settlement.  *See generally Great Lakes Dredge & Dock Co. v. Tanker Robert Watt Miller*, 957 F.2d 1575, 1579 (11th Cir. 1992) ("Some courts use a *pro rata* approach under which the non-settling joint tortfeasor receives a credit based upon the percentage of the settling party's fault. Other courts apply a *pro tanto* approach and give a credit for the actual dollar amount of the settlement." (maritime action)); Jean Macchiaroli Eggen, Understanding State Contribution Laws and Their Effect on the Settlement of Mass Tort Actions, 73 Tex. L. Rev. 1701, 1703 (1995) (providing an "overview of the various state approaches to contribution and settlement, focusing on the rules that address the situation in which some, but not all, of the tortfeasors settle with the plaintiff").

bear the burden of proving the "amount of settlement as set off against damages otherwise recoverable." *Wylam Ice Co.*, 304 So. 2d at 3.  In fact, the FDIC-R has not been entirely opposed to a pretrial disclosure of the allocated settlement amount.  It "offered to disclose the amount of the overall settlement that the FDIC-R allocated to the claims in this case if the Defendants would defer seeking any additional discovery regarding the allocation until after a verdict in the FDIC-R's favor," (Doc. # 64, at 2 n.3), but Defendants declined that offer.[5]  Rather, the FDIC-R's objection to the disclosure of the amount of the settlement allocation is directed toward the alleged prematurity of the discovery's relevance, which is addressed later in this opinion.  In short, based upon the parties' assumptions and general principles of Alabama law governing a set-off defense, the amount of the $1.031 billion settlement allocated to the claims is relevant to the set-off defense within the meaning of Rule 26(b)(1).

The relevance of the methodology underlying the FDIC's allocation is a slightly more challenging issue.  Defendants contend that the FDIC-R's allocation of the $1.013 billion to the multiple settled lawsuits was based upon the FDIC-R's internal decision-making methods and, therefore, that the FDIC-R was not required

---

[5] It may be, as suggested in a hearing in another case filed in this district by the FDIC as receiver for Colonial Bank, that the settlement allocation of the $1.013 billion is no longer shrouded in secrecy.  *See generally FDIC-R v. PricewaterhouseCoopers LLP*, No. 12cv957-WKW (M.D. Ala. Oct. 31, 2012) (Feb. 12, 2016 H'rg).  There is, however, no indication in the record of this case that the FDIC-R has disclosed to Defendants what amount of the $1.013 billion was allocated to the claims in this lawsuit.

to subject its allocation methodology to any external sifting (judicial or otherwise). Defendants argue that they should not have to accept at face value "the amount that [the FDIC-R] *claims* was settled," (Doc. # 80, at 12), but that they should have an opportunity to probe whether the FDIC-R acted in its own self-interest—"with an eye toward maximizing claims in ongoing litigation"—in its allocation of a dollar figure to the settlement of the claims in this case. (Doc. # 80, at 8.) The FDIC-R contends, however, that Alabama law will permit Defendants to obtain a damages set-off in the precise amount of the pro tanto settlement, nothing more or less, and that "there is no basis under Alabama law . . . for Defendants to second-guess the amount of the partial settlement . . . ." (Doc. # 53, at 12.) According to the FDIC-R, the "how and why" are not relevant to Defendants' defense of a set-off.

Neither the FDIC-R nor Defendants have cited particularly helpful authority. For starters, *Campbell v. Williams*, 638 So. 2d 804, 812 (Ala. 1994), which recognized the general rule in Alabama that a non-settling joint tortfeasor is entitled to "a set-off of the amount of the pro tanto settlement against the amount of the verdict," does not enhance Defendants' position that they are entitled to a set-off in the "*true*" amount of the allocation versus "the amount that [the FDIC-R] *claims* was settled."[6] (Doc. # 80, at 8 (citing *Campbell*, 638 So. 2d at 812).) The defendant in *Campbell* did not challenge the amount of the reduction of the jury's

---

[6] It is not clear what Defendants mean by the word "true" in this particular context, as they fail to define it. Ordinarily, factual truth is that which agrees with final reality.

12

verdict based on the joint tortfeasor's pro tanto settlement. The defendant contended that the verdict was invalid because the trial court applied the reduction after the jury rendered its verdict and did not advise the jury of the pro tanto settlement. Although recognizing a joint tortfeasor's right to plead and prove a settlement to the jury as grounds for a set-off, the Alabama Supreme Court concluded that the settlement was neither final nor disclosed to the trial court prior to the verdict. Because the trial court's post-verdict set-off gave the defendant the relief to which he was entitled, the Alabama Supreme Court concluded that the verdict was valid. *See Campbell*, 638 So. 2d at 812–13. In short, Defendants fail to explain how *Campbell* advances their position. At the same time, neither does the FDIC-R cite any Alabama case that is factually on point or sufficiently similar for a reasonable analogy to be drawn.

The absence of citation to on-point authority under Alabama law is not surprising. This FDIC-R settlement does not represent a typical partial settlement between a plaintiff and a joint tortfeasor. It is part of a global settlement of more than $16 billion addressing massive banking and financial fraud on a national scope. *See Bank of America to Pay $16.65 Billion in Historic Justice Department Settlement for Financial Fraud Leading up to and During the Financial Crisis* (Aug. 21, 2014), https://www.justice.gov/opa/pr/bank-america-pay-1665-billion-historic-justice-department-settlement-financial-fraud-leading year) (Last visited Mar. 9, 2016). The FDIC-R Settlement, in particular, involves the FDIC in its

capacity as receiver for twenty-six failed federally insured banks and the FDIC-R's pursuit of federal- and state-law claims arising from alleged misrepresentations in the offering documents for numerous residential mortgage-backed securities purchased by the failed banks. It resolves fourteen individual lawsuits commenced by the FDIC as receiver, three class actions, two actions commenced by Bank of America against the FDIC-R, and a Freedom of Information Act lawsuit brought on behalf of Bank of America against the FDIC in its corporate capacity. Alabama case law arising out of car wrecks or bridge failures hardly addresses, other than in very general terms, the highly complex and multifaceted issues at play here. It gives flavor but not necessarily nourishment. Nevertheless, the court will take what law has been offered and apply it to resolve a discovery dispute. The discovery ruling is not necessarily the law of the case.

In light of liberal discovery rules and Alabama law generally governing a set-off defense, the court finds that the methodology underlying the amount of the $1.031 billion the FDIC-R allocated to settle the claims in this action against Bank of America and the Countrywide Defendants is discoverable to an extent. The FDIC-R will be required to provide Defendants and the court a summary of the techniques, methods, and formulas by which the FDIC-R allocated the FDIC-R Settlement proceeds among the various lawsuits. The FDIC-R will not be required, however, to divulge the settlement amounts for claims other than those related to the instant lawsuit. Whether ultimately evidence of the methodology can

be considered in determining the amount of a set off in the event of a plaintiff's verdict is not an issue that needs to be resolved today. For now, and solely for purposes of discovery, the court will not require Defendants to view the allocated dollar figure in a vacuum. On this unique record where it is averred that the FDIC-R allocated the $1.013 billion to different lawsuits based upon its own internal procedures, Defendants may conduct relatively compact discovery to shed light on how the FDIC-R arrived at the dollar figure it allocated to the claims in this lawsuit. No argument presently has been made that the settlement information is privileged,[7] and no demonstration has been made that the discovery is not "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). For purposes of this opinion, the Rule 26(b)(1) prerequisites for obtaining discovery have been met.

The discussion turns briefly to the timing of the discovery. In the interest of judicial economy, the court finds that, to the extent provided above, discovery will not be postponed until after verdict. Generally speaking, "discovery as to damages is proper." 8 Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus, Federal Practice and Procedure § 2008.4, at 194–95 (3d ed. 2010); *see also Caruso v. Coleman Co.*, 157 F.R.D. 344, 348 (E.D. Pa. 1994) ("The law is well settled that information regarding damages is as discoverable as information which pertains to

---

[7] The FDIC-R reserved the right to raise issues pertaining to attorney-client privilege and work-product protection to the extent discovery goes beyond the allocation figure and into the FDIC-R's methodology for the allocation. To the extent the parties in good faith cannot resolve privilege matters, those issues can be raised before the magistrate judge in a properly supported motion.

liability."). This is not a case where the trial on issues of liability and damages has been bifurcated. *See* 8 Charles Alan Wright, *et al.*, Federal Practice and Procedure § 2008.4, at 194–95 (3d ed. 2010) (observing that where liability and damages are tried separately, "discovery pertaining to damages is sometimes put off until after liability has been established"); *see also Barclay v. Gressit*, No. 2:12-CV-156-JHR, 2013 WL 3819937, at *3 (D. Me. July 24, 2013) (rejecting the argument that discovery concerning a settlement agreement was "premature because the issue of damages would arise only if the defendant were found liable" where "[t]here ha[d] been no bifurcation of trial on liability and damages" (citing Charles Alan Wright, *et al.*, Federal Practice and Procedure § 2008.4, at 194–95 (3d ed. 2010))).

The FDIC-R cites *Bottaro v. Hatton Associates*, 96 F.R.D. 158 (E.D.N.Y. 1982), which applied a heightened relevance standard in denying a motion to compel pretrial disclosure of the terms of a confidential settlement agreement as irrelevant to a damages set-off. Courts adopting *Bottaro*'s reasoning maintain that the requirement of a particularized showing of relevance "encourages settlements and protects their confidentiality while still allowing discovery if the information is truly relevant." *Shipes v. BIC Corp.*, 154 F.R.D. 301, 309 (M.D. Ga. 1994). *Bottaro* is distinguishable. The FDIC-R Settlement is not embodied in a confidential document, but is accessible on a public website, and the parties have not pointed to any language in the settlement agreement or related documents whereby the settling parties agreed to maintain the confidentiality of the amount of

funds allocated to each lawsuit (or claim) or the FDIC-R's formula for allocating the funds. *Bottaro*'s justification for application of the heightened discovery standard loses force where the FDIC-R has not suggested that the parties to the FDIC-R's settlement agreement sought to maintain the confidentiality of the settlement information that Defendants now seek.[8] After careful consideration, the court finds that the line of cases upon which the FDIC-R relies does not provide a persuasive reason for withholding until after the verdict the limited discovery that the court is permitting.

**B.     Defendants' Motion to Reopen Discovery**

Federal Rule of Civil Procedure 16(b) requires the party seeking to enlarge an established scheduling deadline to demonstrate good cause. Fed. R. Civ. P. 16(b)(4). "Rule 16(b) does not define good cause, but the advisory committee note indicates that good cause exists if the schedule cannot reasonably be met despite the diligence of the party seeking the extension." *Green Island Holdings, LLC v. British Am. Isle of Venice (BVI), Ltd.*, 521 F. App'x 798, 800 (11th Cir. 2013) (citation and internal quotation marks omitted).

Defendants move to reopen fact discovery, which closed on February 7, 2014, for the limited purpose of discovering information about the FDIC-R

---

[8] It should be noted that other district courts have rejected *Bottaro*'s reasoning and have required the disclosure of confidential settlement agreements, in part, because of their relevance to the issue of a damages set-off. *See, e.g., Bennett v. La Pere*, 112 F.R.D. 136 (D.R.I. 1986) (finding *Bottaro*'s heightened relevance requirement for disclosure of a confidential settlement agreement "out of kilter with the spirit and philosophy of the Federal Rules").

Settlement allocation and the methodology underlying that allocation. Good cause exists because the FDIC-R Settlement was not executed until after fact discovery closed in this action. The FDIC-R does not refute that the FDIC-R Settlement post-dated the discovery deadline, and its challenge to the prematurity of the discovery has been rejected. Accordingly, Defendants' motion to reopen discovery will be granted for the limited purpose set out herein.

### III.  CONCLUSION

Accordingly, it is ORDERED as follows:

(1)  Defendants' Motion for Reconsideration (Doc. # 79) is GRANTED and the brief in support of the motion (Doc. # 80) is construed as a reply brief in support of Defendants' Motion to Reopen Discovery for the Limited Purpose of Discovering Settlement Information and Motion to Compel Disclosure of Settlement Information.

(2)  The Order entered on November 19, 2015 (Doc. # 69) is VACATED.

(3)  Defendants' Motion to Reopen Discovery and Motion to Compel Disclosure of Settlement Information (Doc. # 54) are GRANTED to the following extent. On or before **March 28, 2016**, the FDIC-R shall provide Defendants and the court a summary of the techniques, methods, and formulas by which the FDIC-R allocated the FDIC-R Settlement proceeds among the various lawsuits. The FDIC-R is not required to divulge, however, the settlement amounts for claims other than those related to the instant lawsuit.

(4) For purposes of preserving the record, on or before **March 28, 2016**, the FDIC-R is DIRECTED to file a copy of the applicable publicly available settlement documents that pertain to the settlement of the claims in this action. The filing shall be titled, "Notice of Filing Settlement Documents."

(5) Plaintiff's Motion for Oral Argument on Pending Motions (Doc. # 68) is DENIED.

DONE this 10th day of March, 2016.

/s/ W. Keith Watkins<br>CHIEF UNITED STATES DISTRICT JUDGE